STATE OF NORTH CAROLINA                              CONTRACT FOR PURCHASE
COUNTY OF MECKLENBURG                                        OF REAL ESTATE

      THIS CONTRACT FOR PURCHASE OF REAL ESTATE (the "Contract") is made and entered into as of the 6th day of June 2001, by and between K.A. Holdings of New York, Ltd. a New York Corporation, registered to do business in the state of North Carolina, (said entity being hereinafter referred to as "Seller"), and Overland Properties, Inc., a North Carolina corporation, its successors and assigns (hereinafter referred to as "Buyer").

STATEMENT OF PURPOSE

      Seller is the Assignee (by virtue of an Assignment and Assumption Agreement recorded in Book 12111, Page 696 on 12 April 2001) of all of the obligations, rights, title, interest and benefits belonging and adhering to the named Beneficiary under that certain Deed of Trust dated the 6th day of June 1996, recorded in Book 8609, Page 939 of the Mecklenburg County Registry; and as Assignee Seller is, or will be in the near future, in a position to bargain, present, convey and sell that certain tract of land together with all improvements thereon located at 1101 Hawthorne Lane, Charlotte, North Carolina, said property being more particularly described below and being currently held by and titled by Hanford's Creations, Inc, a North Carolina corporation. Buyer desires to acquire said real property from Seller under the terms and conditions stated in this Contract, and Seller is willing to sell and convey such property pursuant to the terms and conditions of this Contract.

      NOW, THEREFORE, subject to the terms and conditions of this Contract, and in consideration of the premises and the respective agreements contained herein, Seller and Buyer agree as follows:

      1.     Description of the Subject. The property which is the subject of this Contract is as follows:

      a.     All of that certain parcel of land together with any and all structures, buildings and improvements thereon known as Tax ID 081-153-35 of the Mecklenburg County tax records, consisting of approximately 7.709 acres (sometimes hereinafter referred to as the "Site"), situated between Hawthorne Lane and Louise Avenue, being adjacent to and northeast of the railroad right-of-way, and being substantially all the same property acquired by Seller, in by deed recorded in Book 7505, Page 724 of the Mecklenburg County Register of Deeds, and being the property thus described in the attached Exhibit A Property Description, consisting of two typewritten pages. Exhibit B attached hereto is a schematic tax map of the property described hereinabove, and shows the Site and "Subject Property" as the area lined and crosshatched.

      b.     All of the rights, privileges, and easements appurtenant to the Site, including without limitation, all rights-of-way, easements, utility facilities and other appurtenances used or to be used in connection with the beneficial use of the Site.

      2.     Purchase Price and Recordable Memorandum. The total Purchase Price shall be $1,600,000.00 (the "Purchase Price"). The Purchase Price shall be paid by Buyer to Seller as follows:

      a.     Upon written acceptance of the terms of sale by appropriate execution of this Contract by Seller's duly authorized agent, officer(s) or principal(s), Purchaser shall cause an earnest money cash binder of $ 160,000.00 to be made, delivered and paid into the trust account maintained by the party designated hereunder as Escrow Agent.

DEFENDANT'S EXHIBIT 1 (Blumberg No. 5114)

b.  Contemporaneous with the execution of this Contract, Seller shall provide Buyer with one or more Memorandums, each in recordable form, executed by Seller and Hanford's Creations, Inc., either individually or jointly, and each said Memorandum may be recorded in the appropriate public registries at Buyer's sole discretion and expense.

c.  Payment of the escrow sum called for herein must be made substantially contemporaneous with the official public recordation of one or more of the aforesaid Memorandums, which recordation shall occur no later than within 2 business days after receipt at Buyer's offices of said original executed copies of the Contract and Memorandums. Failure to so deliver a cash binder shall void and nullify this Contract and release Seller from any further obligation.

d. The balance of the Purchase Price shall be payable as follows: $ 1,440,000.00 in cash (certified bank funds) at the Closing, subject to any applicable credits and the Security Fund Retention described in Section 3.

3.  Closing, Post-Closing Tenancy by Seller, and Security Fund.

a.  The "Closing" shall be held on or about September 1, 2001, and in any event no later than the last day of October 2001, after which time Seller shall keep the deposit asa a liquidated damage and this contract shall be void, unless failure to close is due to Seller's inability to deliver a fully insurable clear title, as called for herein.

b.  At the Closing, Seller shall transfer title as called for herein, and Seller shall have the right to remain on a portion of the premises as a tenant, such tenancy to be limited to an area of no more than 30,000 square feet of warehouse and showroom space in areas currently utilized by the Hanford's Creations operation. The sections of the Subject Property in which such tenancy may occur shall be the northern and upstairs portions of the U-shaped structure, and personal property left elsewhere on the premises more than two weeks after Closing shall be deemed abandoned. Seller's post-closing occupancy may continue, without paying rent, for a period of not less than four (4) months extending to February 28, 2002, after which time rent shall be due, for any holdover, at a rate of $3,000 per month, or fraction thereof, for the months of March and April 2002. Holdover past April 30, 2002 shall be due in advance at a rate of $10,000 per month, or fraction thereof. Seller shall provide written notice of termination of its tenancy at such time as it vacates and Seller shall be responsible for removing substantially all of its property and belongings and related debris from the Subject Property at the termination of its tenancy, absent subsequent agreement otherwise.

c.  At Closing, Seller shall permit the Closing Attorney to deposit into escrow, from Seller's proceeds, a post-closing tenant Security Fund deposit and liquidated damages sum of $ 50,000.00. This Security Fund escrow shall be held by the Buyer's attorney or, at Seller's option, the Title Company issuing applicable title insurance to Buyer. Any controversy regarding compliance and apportionment as to this liquidated amount shall be settled by binding arbitration, under the rules of the American Arbitration Association, and parties hereby consent to any arbitration hearing necessitated hereby to be held via multi-party telephone conference call so as to alleviate any travel expenses related to such arbitration.

d.  Any and all utilities used in any way by Seller as a post-closing tenant shall

be Seller's sole responsibility, and any personal property remaining on the Subject Property after Seller's cessation of tenancy, whether by written notice or otherwise, shall be deemed abandoned.

    e. The closing shall be held in the offices of Buyer's legal counsel in Charlotte, North Carolina or at such other place as the Buyer and Seller may agree.

4.    Title to the Subject Property. At the Closing, Seller shall deliver to Buyer a deed in form and content reasonably satisfactory to counsel for Buyer, with general warranties and with documentary stamps to be affixed thereto at Seller's expense, conveying to Buyer a good, indefeasible, fee simple, marketable and insurable title to the Subject Property said title to be insurable both as to fee and marketability thereof at regular rates by a reputable title insurance company of Buyer's choosing (the "Title Company"), without exception except as to those matters enumerated in this Paragraph. The policy of the Title Company shall provide full coverage against mechanics, contractors or materialmen liens, and shall contain such other special endorsements as Buyer's counsel may reasonably require. The Subject Property shall be conveyed from Seller to Buyer free and clear of liens, encumbrances, claims, rights of way, easements, leases, restrictions and restrictive covenants, except that such property may be conveyed subject only to the following:

    a.    Public utility easements of record in customary form to serve the Subject Property;

    b.    Zoning ordinances of any other governmental agency having the jurisdiction over the development of the Subject Property;

    c.    City-County ad valorem property taxes for the applicable year in which the Closing takes place, which such taxes shall be prorated on a calendar year basis as of the date of Closing.

If, in the reasonable opinion of Buyer's counsel, Seller's title fails to meet the requirements of this Paragraph, then any such deficiency shall be specified in particularity in writing to Seller, and Seller shall have until the Closing, or at Buyer's option, a reasonable time thereafter, in order to cure such deficiency at Seller's sole cost and expense. If Seller fails to cure such defect(s) within the permitted time, Buyer shall have the option of taking title "as is" and consummating the Closing or, in the alternative of terminating this Contract and receiving an immediate refund of the Binder then held hereunder.

5.    Closing Costs. Seller shall pay for the preparation of the deed to the Subject Property and the North Carolina transfer tax stamps to be affixed thereto. Buyer shall be responsible for the title insurance premium, the cost of recording the deed and any other instruments to be delivered under the terms of this Contract with respect to the Subject Property. Except as may otherwise be stated herein, each party shall bear its own expense or expenses, including its own attorney fees.

6.    Pre-Closing Rights and Privileges.

    a.    From the date of execution of this Contract, Buyer's authorized agents and employees, as well as others authorized by Buyer, shall be entitled to go upon the Subject Property and make such surveying, architectural, engineering, topographical, geological, soil and other tests, analyses and measurements as Buyer deems necessary or advisable and in such a manner as not to interfere with current tenants' usage. Buyer shall indemnify and hold Seller

3

harmless from any claims, obligations, or demands by third parties including claims for liens, arising out of the Buyer's entry onto the Subject Property prior to the Closing, and Buyer shall be responsible to Seller for any permanent damage caused by Buyer to the Subject Property if not acquired by Buyer. Buyer will provide Seller with a certificate of insurance for general liability covering Buyer while on the Subject Property, and Seller shall be named as an additional insured.

  b. Notwithstanding said rights of examination and study, it is understood that Buyer is purchasing the Subject Property "as is" and no warranties are being made as to structural suitability for any given purpose nor does Seller make any representations regarding the suitability of current zoning for current usages or any future intended usage.

  7. <u>Risk of Loss</u>. Risk of loss or damage by fire or other casualty through the date of Closing, and actual delivery of the deed of conveyance to Buyer, shall remain with Seller.

  8. <u>Covenant not to Commit Waste & Permit Roof Repair.</u> Seller agrees not to commit or permit waste, exclusive of ordinary wear, tear and depreciation, upon Subject Property and Seller represents that the said Subject Property shall be maintained and remain in substantially the same condition as it is now up to and through the date of Closing. Furthermore, Seller will permit Buyer, at Buyer's expense, to have a reputable commercial roofing firm to perform minor roof repair designed to prevent leaking at currently known trouble spots. Any such cost of roof repair shall be borne by Buyer exclusively. Seller shall take no action with respect to the roof.

  9. <u>Real Estate Brokerage Commission</u>. No broker or finder has been involved in this transaction, and Seller and Buyer each agree to indemnify and hold harmless the other from any claims, demands, or costs and expenses thereof arising out of any alleged brokerage commission, fee, or other compensation with respect to this Contract based upon an agreement alleged to have been made or other action alleged to have been taken by the indemnifying party.

  10. <u>Binder.</u>

  a. The Binder shall be in the amount heretofore stated in Section 2. Said Binder shall be payable to and held in escrow by a law firm in Charlotte, NC, to be designated by Buyer as the "Escrow Agent" and said firm shall serve as the Escrow Agent subject to the terms and provisions of this Contract. Interest on said escrowed sum shall be the property of the Buyer up to the time of closing. Receipt and Placement of said binder in a trust account shall be confirmed in writing by said Buyer's law firm to Seller's attorney as set forth in Section 15 (b).

  b. In accordance with the terms of this Contract, the full amount of the Binder shall be credited to the purchase price due from Buyer at Closing.

  11. <u>Eminent Domain</u>. If prior to the Closing all or any portion of the Subject Property is taken by eminent domain or if condemnation proceedings are commenced, Buyer shall have the option by written notice to Seller, to terminate this Contract and receive an immediate refund of the Binder. If Buyer does not elect to terminate this Contract, it shall remain in full force and effect, and Seller shall assign, transfer, and set over the Buyer at the Closing all of Seller's right, title, and interest in any awards that may be made for such taking.

  12. <u>Representations and Warranties of Seller.</u> Seller makes the following representations and warranties to Buyer, each of which shall be deemed material, as follows:

4

    a. Seller shall possess prior to and at the date of Closing a marketable, insurable, fee simple title to the Subject Property which is subject only to those exceptions listed in Paragraph 4 above, and will be able to deliver same in accordance with said Paragraph 4.

    b. Any leaseholds or tenancies, either written or verbal, which apply to the Subject Property, or any portions thereof, are fully terminable at the discretion of the Seller or any future owner (acting as landlord) no later than the actual Closing Date. Upon Buyer's request after execution of this Contract, Seller shall promptly inform Buyer of the relevant terms of any verbal or written leases pertaining to any part or portion of the Subject Property and Site, any rentals due or owed subsequent to Closing shall be the entitlement and property of the Buyer.

    c. Seller has entered into no agreement, oral or written, not referred to herein, with reference to the Subject Property and neither Seller nor the Subject Property are subject to any claim, demand, suit, unfiled lien, proceeding or litigation of any kind, pending or outstanding, or, to the knowledge of Seller, threatened or likely to be made or instituted, which would in any way be binding upon Buyer, or its successors or assigns, or affect or limit Buyer's, or its successors' or assigns', full use and enjoyment of the Subject Property, or which would limit or restrict in any way Seller's right or ability to enter into this Contract and consummate the sale and purchase contemplated hereby.

    d. Any and all unpaid taxes, charges or assessments arising out of the conduct of Seller's business or the operation of the Subject Property, which would constitute a lien against the Subject Property, that will be paid at Closing, except for the lien of the current year's City-County ad valorem property taxes, the obligation for which shall be pro-rated as of the date of Closing.

    13. <u>Conditions to Buyer's Obligations</u>. The obligations and liabilities of Buyer hereunder shall in all respects be conditioned upon a certification by Counsel for Seller dated as of the Closing, in form and substance satisfactory to counsel for Buyer, to the effect that (i) Seller is authorized to enter into this Contract; (ii) all necessary action has been taken to authorize Seller to execute this Contract and any other documents described herein and to perform all of Seller's obligations hereunder; (iii) this Contract constitutes valid and binding obligations of Seller; and (iv) Seller's interest in the Subject Property is not subject to any claim, demand, suit, unfiled lien, proceeding, or litigation of any kind pending, outstanding, threatened, or likely to be made or instituted which would in any way affect Buyer or its successors or assigns in regards to full use and enjoyment of the Subject property, or which would limit or restrict in any way Seller's right or ability to enter into this Contract and consummate the transaction described hereby.

    14. <u>Assignment</u>. The ability to take title to the Subject Property under this Contract may be assigned by Buyer to any entity, partnership or limited liability company in which Buyer, or one of its officers, is a substantial principal, member or a general partner or to any entity acting as a qualified intermediary to facilitate a Section 1031 Exchange but Buyer must first obtain the written approval Seller, which approval shall not be unreasonably withheld. Notwithstanding the anything in this contract to the contrary, Buyer shall have the right to title the property to any entity of its choosing at closing.

    15. <u>Miscellaneous</u>.

    a. <u>Survival of Provisions</u>. Only the terms, conditions, representations, and agreements contained herein as may have applicability shall survive the Closing and the delivery of the deed and any other documents pertinent hereto. Parties may execute a standard commercial lease agreement with terms not inconsistent with the provisions of this Contract to

cover the period of any post-closing tenancy. Seller may vacate effective as of the end of any calendar month following the Closing.

b. Any notice required or permitted to be given under this Contract shall be in writing and shall be deemed to have been given when deposited in the United States mail, registered or certified, postage prepaid, return receipt requested, and addressed as follows:

SELLER:   John C. MacNeill, Jr., Esq.
          6743 A Fairview Rd., Charlotte, NC  28210

BUYER:    Overland Properties, Inc.
          516-B Fenton Place
          Charlotte, NC 28207-1920

Either party may, from time to time, by notice as herein provided, designate a different address for service of notice pursuant to this Contract.

c. Applicable Law. This Contract shall be governed by and construed in accordance with the Laws of the State of North Carolina.

d. Entire Agreement. This instrument and any exhibit hereto contain the entire understanding and agreement by and between the parties and all prior or contemporaneous oral or written agreements or instruments are merged herein and no amendment to this Contract shall be effective unless the same is in writing and signed by the parties hereto.

e. Binding Effect. This contract shall be binding upon and shall inure to the benefit of all the parties hereto and their respective permitted successors and assigns.

f. Captions and Headings. The captions and headings throughout this Contract are for convenience and reference only and the words contained therein shall in no way be held to define or add to the interpretation, construction, or meaning of any provision of this Contract.

g. Counterpart Originals. This Contract shall be executed in four (4) originals and Seller and Buyer shall acknowledge receipt of two (2) of the executed originals.

h. Recordation. A notarized Memorandum of Contract shall be executed by the parties hereto contemporaneous with the execution of this Contract and the same shall be recorded of public record at the time the escrow deposit is made.

IN WITNESS WHEREOF, the parties hereto have caused this Contract to be executed, sealed and notarized as of the date of execution by Seller and shall be effective as of the date an original copy hereof is delivered to Buyer as set forth in Section 2 hereof.

SELLER:                                    BUYER:

K. A. Holdings, Ltd. of New York           OVERLAND PROPERTIES, Inc.

By: _____ (SEAL)       By: _____ (SEAL)
                                                Peter K. Thompson, President