# Exhibit L

# THE CHAGARIS LAW FIRM, P.A.

-ATTORNEYS AT LAW-
POST OFFICE BOX 1408
DAVIDSON, NORTH CAROLINA 28036
TELEPHONE (704) 894-9672
FACSIMILE (704) 894-9673
chris.chagaris@att.net

September 28, 2006

*Please file*

*KA &
Overland*

Mr. Charles J. Diven, Jr.
2649 Strang Blvd, Suite 104
Yorktown Heights, NY 10598

Re:    *K. A. Holdings of New York, Inc. v. Overland Properties, Inc. &
Hawthorne Mills, LLC.  Case No. 03-CVS 012766*

Dear Mr. Diven:

Please find enclosed a stamp filed copy of the Transcript for the above referenced matter.

Should you have any questions, please do not hesitate to contact me.  Thank you for your
time and consideration.

Sincerely,

Christopher G. Chagaris
Attorney at Law

Enclosures
CGC/rp

## Christina Lopez

| | |
|---|---|
| **From:** | <CHRISTMASDECO@aol.com> |
| **To:** | <chris.chagaris@att.net> |
| **Cc:** | <divenlawoffice@verizon.net>; <Cjdiven@aol.com> |
| **Sent:** | Thursday, September 28, 2006 10:42 AM |
| **Attach:** | Re_ transcripts etc-URGENT.eml |
| **Subject:** | Fwd: transcripts etc-URGENT |

Thanks for the reply.  You kept your word
What address did u mail transcript to- did you call CJ for his Federal Express #?

**What about the conference call you canceled and were going to reschedule??**

# Christina Lopez

**From:** &lt;CALART100@aol.com&gt;
**To:** &lt;divenlawoffice@verizon.net&gt;
**Cc:** &lt;Cjdiven@aol.com&gt;
**Sent:** Tuesday, October 03, 2006 10:40 AM
**Subject:** Chagaris

Christina:

I received the paper work for transcript for KA Holding from Chagaris. Do not need to be copied
Need to see CJ written comments- can discuss- but want written explanation to refer to & how to proceed with
this matter

I also want to be copied whether it be email or fax written correspondence to Chagaris
He canceled a phone call conference I think 3 weeks ago???-check your records & has not rescheduled which
should have been done the next day. I also want to set up a meeting face to face. Copy me on anything b4 u
send as Carl Mancini/John Kulisek are the main principals. I want a written trail of this as it is getting quite
frustrating!!!!!!!!!!!!!!!!!!

Also continue to call & we should have a log of phone calls as this guy never returns phone calls

Internal Virus Database is out-of-date.
Checked by AVG Free Edition.
Version: 7.1.394 / Virus Database: 268.10.5/404 - Release Date: 7/31/2006

STATE OF NORTH CAROLINA     IN THE GENERAL COURT OF JUSTICE
                                     SUPERIOR COURT DIVISION
COUNTY OF MECKLENBURG       FILE NO. 03-CVS-012766

```
_____
                        )
K.A. HOLDINGS OF NEW YORK,   )
INC.,                    )
                        )
        VS.              )        T R A N S C R I P T
                        )
OVERLAND PROPERTIES, INC.,   )
HAWTHORNE MILL, L.L.C.    )
_____  )
```

     TRANSCRIPT OF PROCEEDINGS TAKEN IN THE GENERAL
COURT OF JUSTICE, SUPERIOR COURT DIVISION, MECKLENBURG
COUNTY, NORTH CAROLINA, AT THE MARCH 31, 2005, CIVIL
SESSION BEFORE THE HONORABLE MARVIN K. GRAY, JUDGE
PRESIDING.


        APPEARANCES:

        CHRISTOPHER CHAGARIS, ESQ.,
        P.O. BOX 1408
        DAVIDSON, NC 28036-1408
        ON BEHALF OF THE PLAINTIFF

        DALE MORRISON, ESQ.,
        1043 E. MOREHEAD STREET, SUITE 200
        CHARLOTTE, NC 28204-2866
        ON BEHALF OF THE DEFENDANT

ALSO PRESENT:

PETER THOMPSON, ESQ.


```
_____
```
        LAURA ANDERSEN, RMR
        800 EAST FOURTH STREET, RM 311
        CHARLOTTE, NC 28202
        704-358-6233

2

P R O C E E D I N G S

THE COURT:  ALL RIGHT.  I BELIEVE

MR. MORRISON, THIS IS YOUR MOTION.

MR. MORRISON:  IT IS, YOUR HONOR.

THE COURT:  ALL RIGHT.  GO AHEAD.

MR. MORRISON:  MAY IT PLEASE THE COURT, WE

HAD FILED THIS MOTION AS A RESULT OF THE PLAINTIFF

DISMISSING, THIS WEEK, ITS LAWSUIT.

MR. THOMPSON, WHO IS ALSO A MEMBER OF THE

BAR, IS THE PRESIDENT OF OVERLAND PROPERTIES, INC,

AND IS THE MANAGING PARTNER OF HAWTHORNE MILL.

I THOUGHT IT MIGHT BE HELPFUL, YOUR HONOR, IF

HE COULD RECITE THE FACTS, SINCE HE HAS PERSONAL

KNOWLEDGE OF BOTH LAWSUITS, SINCE HE WAS INVOLVED

IN BOTH LAWSUITS.

OR I CAN GO THROUGH THAT.  I HAVE TRIED TO

SET THEM FORTH FOR, YOUR HONOR.

THE COURT:  DO YOU HAVE ANY OBJECTION TO

MR. THOMPSON RECITING SOME THINGS?

MR. CHAGARIS:  AS LONG AS I HAVE THE RIGHT TO

CROSS.

THE COURT:  YES.  GO AHEAD, MR. THOMPSON.

MR. THOMPSON:  MAY IT PLEASE THE COURT.

THE ENTITY NAMED OVERLAND PROPERTIES IS A

LITTLE SMALL REAL ESTATE FIRM, NO LONGER IN

BUSINESS, SIGNED A CONTRACT WITH K.A. HOLDINGS TO
PURCHASE SOME PROPERTIES THAT K.A. HOLDINGS DID
NOT EVEN OWN.  IT WAS REAL ESTATE ON HAWTHORNE
LANE IN THE YEAR 2001.

THAT PURCHASE HAD, PURCHASE AGREEMENT, AND IT
CLOSED ON OCTOBER 31st of 2001.

Part of that contractual agreement, which is
in the evidence as an exhibit through the
pleadings, allowed the selling party two weeks to
remove goods from a major portion of the property.

They were also entitled to keep goods for
approximately four months on a remaining portion
of the property under the contract.

They had exactly two weeks under the contract
in which to do so.

After two weeks went by, we asked them what
their intentions were.

They indicated they were going to move it
when they were jolly well ready.  That's my
characterization of it.

We wrote them a letter, which is also in
evidence as an exhibit.

THE COURT:  This letter is to K.A. Holdings?

MR. THOMPSON:  Yes, sir, K.A. Holdings.

Let me just say for the record, K.A. Holdings

4

BROUGHT THE PROPERTY AT FORECLOSURE SALE, SOMETIME

IN OCTOBER, AND THEN SOLD THE PROPERTY.

IF YOU'RE THINKING HOW DID THEY BUY IT AT

FORECLOSURE SALE, WERE REALLY IN POSITION TO SIGN

THE CONTRACT AND SELL IT IN THE FIRST PLACE, THEY

WEREN'T.

A THIRD ENTITY NAMED HANFORD CREATIONS, INC,

OWNED THE PROPERTY OF RECORD.  THEY SIGNED A

MEMORANDUM OF CONTRACT, THAT COMPANY, HANFORD

CREATIONS, SIGNED A MEMORANDUM OF CONTRACT.

BECAUSE AT THE TIME WE ENTERED INTO THE CONTRACT

TO BUY THE PROPERTY, OF RECORD OWNER WAS SOMETHING

CALLED HANDFORD CREATIONS OR HANDFORD, INC.

HANDFORD AS THE TITLED OWNER WAS FORECLOSED

ON, AND K.A. HOLDINGS WAS THE PURCHASER AT THE

FORECLOSURE SALE.

THEY THEN CONVEYED TITLE, WHICH WE HAVE

INSURANCE FOR, AT THE CLOSING ON OCTOBER 31ST.

BY LETTER OF NOVEMBER 27TH I WROTE TO K.A.

HOLDINGS IN CARE OF THEIR ATTORNEY JOHN MCNEIL WHO

IS A CHARLOTTE ATTORNEY, SAYING, "GENTLEMEN, THIS

LETTER IS BEING SENT OVERNIGHT, BY OVERNIGHT

DELIVERY, TO ADVISE YOU THAT K.A. HOLDINGS HAS

BREACHED ONE OR MORE OF THE POST CLOSINGS

OBLIGATIONS OF SELLER AS CONTAINED IN SECTION

5

THREE OF THE CONTRACT.

"OBLIGATIONS THAT HAVE BEEN BREACHED ARE AS
FOLLOWS:

"SELLER HAS FAILED TO MOVE OR REMOVE
SUBSTANTIALLY, ALL OF ITS PROPERTY FROM THE
PORTIONS OF THE BUILDING IT WAS TO VACATE WITHIN
TWO WEEKS AFTER CLOSING.

"AND SELLER HAS FAILED TO REMOVE RELATED
DEBRIS FROM THESE PREMISES AS WELL.

"SPECIFICALLY, MORE THAN 10 DAYS PASSED THE
NOVEMBER 14, 2001 DEADLINE FOR REMOVAL OF PROPERTY
AND DEBRIS THAT REMAIN LARGE AND SUBSTANTIAL
QUANTITIES OF REMNANTS, INCLUDING BOXED INVENTORY,
AND UNBOXED MERCHANDISE, AND AN ASSORTMENT OF
BUSINESS RELATED MATERIAL, INCLUDING SHELVING,
OFFICE FURNITURE AND DISPLAY STANDS AND
ACCESSORIES.

"IN VIEW OF SUCH BREACHES, HAWTHORNE MILL,
L.L.C., THE BUYER, IS HEREBY REQUESTING THAT THE
SECURITY FUND BE RELEASED TO BUYER, PURSUANT TO
THE TERMS OF SECTION TWO OF THE ESCROW AGREEMENT
WHICH WAS EXECUTED CONTEMPORANEOUSLY WITH THE
CLOSING OF THIS TRANSACTION.

"A COPY OF THIS LETTER IS BEING SENT TO THE
ESCROW AGENT."

6

SEVERAL DAYS AFTER THAT LETTER, THERE WAS NO
FORMAL REPLY OR RESPONSE OR OBJECTION TO THE
DISBURSEMENT OF THE ESCROW FUNDS.

THE ESCROW AGENT WAS TO BE INFORMED BY 48
HOURS OR TWO FULL BUSINESS DAYS AFTER NOTICE.

AFTER THREE FULL BUSINESS DAYS THERE WAS SOME
CONVERSATION BETWEEN MR. MCNEIL AND THE ESCROW
AGENT, I AM TOLD BY THE ESCROW AGENT.

BUT THAT WAS OUTSIDE THE TIME FOR LODGING AN
OBJECTION IN WRITING UNDER THE TERMS OF THE ESCROW
AGREEMENT.

THE ESCROW MONEY WAS THEN DISBURSED TO
HAWTHORNE MILL, THE BUYER.

SUBSEQUENTLY, IN LATER PART OF 2001,
DECEMBER, SPECIFICALLY.  ON DECEMBER THE FIFTH, I
WROTE A LETTER TO K.A. HOLDINGS, ATTENTION TO
SOMEONE NAMED BRUCE ADLER (PHONETIC SPELLING).

I SAID, "AS YOU KNOW, CONSIDERABLE AMOUNTS OF
PROPERTY AND DEBRIS REMAIN IN AND ABOUT THE
VACATED PORTIONS OF THE OLD HANDFORD'S FACILITY.

"K.A. HOLDINGS HAD TWO WEEKS AFTER CLOSING
UNDER THE CONTRACT TO REMOVE ALL OF ITS PROPERTY.

"FURTHERMORE THE NEW OWNERSHIP PERMITTED YOUR
OPERATIVES AN ADDITIONAL PERIOD OF TIME IN WHICH
TO ACCOMPLISH YOUR OBLIGATIONS UNDER THE CONTRACT.

"HOWEVER, YOUR REMOVAL EFFORTS HAVE NOT MET
EVEN THAT EXTENDED TIMETABLE.

"ACCORDINGLY, PLEASE TAKE NOTE" THAT THIS IS
REFERRED TO A PIECE OF VEHICLE, "THE WHITE VAN
PARKED IN THE COURTYARD, IS IN THE WAY. IF YOU'RE
INTERESTED IN HANDLING THIS REMOVAL YOURSELVES,
PLEASE LET ME KNOW. WE'RE WILLING TO ACCOMMODATE
YOU ON THIS AS A COURTESY, UP TO DECEMBER 14.

"AFTER THAT DATE WE WILL BE FORCED TO TAKE
STEPS OURSELVES TO HAVE THE VAN RELOCATED."

THE VAN IS NOT REALLY RELEVANT TO ANYTHING IN
THIS CASE, OTHER THAN SIMPLY TO SHOW THE COURT THE
COURSE OF ACTION SUBSEQUENT TO THE FORFEITURE OF
THE ESCROW DEPOSIT.

FINALLY, ON DECEMBER 13TH, 2001, I WROTE TO
MR. BRUCE ADLER, K.A. HOLDINGS WITH A COPY TO C.J.
DIVEN (PHONETIC SPELLING) WHO I WAS INFORMED WAS
HIS ATTORNEY.

THE COURT: WHEN WAS THIS?

MR. MORRISON: EXCUSE ME. DECEMBER 13TH,
2001.

THE COURT: ALL RIGHT. THANK YOU. GO AHEAD.

MR. THOMPSON: THIS IS ALSO IN EVIDENCE, YOUR
HONOR, EXHIBIT 5.

MR. MORRISON: IT'S NOT IN EVIDENCE. THOSE

8

WERE GOING TO BE OUR EXHIBITS.

MR. THOMPSON:  THESE WERE TO BE OUR EXHIBITS
AT TRIAL.  THEY ARE NOT IN EVIDENCE.  I APOLOGIZE.
I THOUGHT THEY WERE ATTACHED TO OUR ANSWER.

MR. MORRISON:  THE CONTRACTS ARE ATTACHED TO
THE PLEADINGS, THE LETTERS ARE NOT.

MR. THOMPSON:  I APOLOGIZE, YOUR HONOR.  I
MISSTATED.

THE COURT:  GO AHEAD.  EXCUSE ME.

MR. THOMPSON:  THE TITLE OF THIS LETTER WAS,
"OCCUPANCY IN EXCESS OF ALLOTTED SPACE, AND
NONMOVEMENT OF VAN.

"YESTERDAY MR. C.J. DIVEN INFORMED ME OVER
THE PHONE, THAT YOU WERE PREPARED TO IMMEDIATELY
MOVE ALL OF YOUR MERCHANDISE INTO AN AREA OF NO
MORE THAN 30,000 SQUARE FEET.

"IN VIEW OF THE FACT THAT YOUR OPERATION IS
CURRENTLY OCCUPYING IN EXCESS OF 50,000 SQUARE
FEET OF SPACE, IN VIOLATION OF YOUR CONTRACTUAL
OBLIGATION.

"MR. DIVEN WAS IN TURN ADVISED THAT WHICHEVER
WAREHOUSE SPACE YOU OCCUPIED, WOULD BE FINE WITH
THE OWNERSHIP, BUT YOU NEEDED TO ADVISE US
IMMEDIATELY OF THE SPACE YOU WISHED TO CONTINUE TO
UTILIZE, IF YOUR ON-SITE EMPLOYEES INDICATION THAT

YOU WOULD BE UTILIZING THE LARGER WOODEN WAREHOUSE
IS NOT CORRECT."

IN OTHER WORDS WE WERE TOLD WHAT SPACE THEY
WANTED BY AN ON-SITE EMPLOYEE OF THE HANDFORD'S
ORGANIZATION.  BUT WE WERE TRYING TO FIND OUT IF
THAT'S IN FACT WHAT HER BOSS IN NEW JERSEY, NEW
YORK WAS WANTING TO DO.

"GIVEN THAT MR. DIVEN SAID YOU WERE READY TO
START ON THURSDAY, TODAY, DECEMBER 13TH, THIS IS
TO ADVISE YOU THAT WE NEED YOUR WRITTEN
CONFIRMATION BY 5:00 P.M. TODAY THAT YOUR
PERSONNEL AND OR SUBCONTRACTORS WILL BEGIN TO MOVE
AND CONSOLIDATE MERCHANDISE INTO CONTRACTUALLY
PERMITTED SPACE, NO LATER THAN FRIDAY,
DECEMBER 14.  AND THAT SUCH OPERATIONS WILL
CONTINUE ON A FULL TIME BASIS UNTIL COMPLETED,
PRESUMABLY EARLY NEXT WEEK.

"ABSENT AFFIRMATIVELY CLARIFYING A TIMELY
CORRESPONDENCE IN THIS REGARD, AND IN VIEW OF THE
FACT THAT WE STILL HEARD NOTHING FROM YOU IN
GETTING THE VAN BEING MOVED, HAWTHORNE MILL,
L.L.C. WILL BE LEFT WITH NO CHOICE BUT TO TAKE
APPROPRIATE LEGAL STEPS TO SECURE ITS PROPERTY AND
CONTRACTUAL RIGHTS WITH RESPECT TO ALL RELEVANT
SPACE AND CONTENTS."

MR. CHAGARIS:  YOUR HONOR, I WILL OBJECT.
THE PURPOSE OF THIS HEARING, ANYTHING THAT'S NOT
INTO EVIDENCE ALREADY IN THE COURT HAS NO
RELEVANCE.

THE COURT:  ALL RIGHT.  WELL I'LL HEAR FROM
YOU WHEN IT COMES YOUR TIME.

MR. CHAGARIS:  THANK YOU.

THE COURT:  THANK YOU.

GO AHEAD, SIR.

MR. THOMPSON:  THEREAFTER WE HEARD NOTHING
MORE FROM THESE PEOPLE IN NEW YORK, AS A
REPRESENTATIVE OF HAWTHORNE MILL, L.L.C. THE
ORIGINAL PURCHASER OF THE MILL.

THE NEXT WE HEARD WAS SOME OSTENSIBLE MOTION
OR NOTICE ON THEIR PART THAT THEY WANTED TO HAVE
AN ARBITRATION OF THE FORFEITURE OF THE ESCROW
MONEY.

WE INDICATED THAT UNDER THE CONTRACT, THEY
HAD TWO DAYS IN WHICH TO OBJECT, IN WHICH CASE
ARBITRATION WOULD BE HELD, WAS APPROPRIATE, AND
WOULD BE BINDING.

THEY FAILED TO DO SO, WHICH IS WHY THE ESCROW
MONEY WAS ALREADY RELEASED BY THE FIRM OF MOORE
AND VAN ALLEN, THE ESCROW AGENTS.

SO THERE WAS NO ARBITRATION LEFT UNDER THE

ARBITRATION PROVISION OF THE ESCROW AGREEMENT.

NOTWITHSTANDING THAT, THEY UNILATERALLY STARTED, APPARENTLY, WE DON'T KNOW, BUT APPARENTLY THEY HAD SOME KIND OF AN ARBITRATION IN NEW YORK, WE NEVER ATTENDED.  WE TOLD THEM WE WOULD NOT ATTEND.  WE TOLD THEM THERE WAS NO JURISDICTION.

EIGHT MONTHS LATER THEY BROUGHT AN ACTION IN THE SUPERIOR COURT OF MECKLENBURG COUNTY TO ENFORCE THEIR ARBITRATION AWARD.

JUDGE MARCUS JOHNSON, AS MR. MORRISON'S BRIEF INDICATES, IN THE COLLOQUIALISM, TOSSED THAT OUT WITH PREJUDICE.

AND HIS ORDER IS DATED DECEMBER THE 12TH, FILED OF RECORD, DECEMBER THE 12TH.  IT CAME ON FOR HEARING ON NOVEMBER THE 21ST, 2002, BEFORE JUDGE JOHNSON, MARCUS JOHNSON.  THAT WAS WITH PREJUDICE.

MAY I TENDER THIS TO THE COURT?  I THINK IT'S IN THE RECORD.

THE COURT:  YES.

MR. MORRISON:  YOUR HONOR, THAT IS ATTACHED TO ONE OF THE EARLIER MOTIONS OF RECORD.

THE COURT:  DO YOU WANT TO SEE THIS?

MR. CHAGARIS:  AS LONG AS IT'S THE SAME ORDER.

12

THE COURT:  IT'S DEFENDANT'S EXHIBIT B AND
IT'S DATED --

MR. CHAGARIS:  I TRUST DALE, YOUR HONOR.

THE COURT:  DECEMBER 10, '02.  IS THAT THE
ONE YOU HAVE?

MR. CHAGARIS:  THAT SOUNDS ABOUT RIGHT.

THE COURT:  ALL RIGHT.

MR. THOMPSON:  MR. CHAGARIS WAS THE ATTORNEY
OF RECORD IN THAT PROCEEDING.  HE ENTERED NOTICE
OF APPEAL AT THE END OF THAT HEARING AFTER JUDGE
JOHNSON MADE HIS RULING VERBALLY.  NO APPEAL WAS
EVER PERFECTED OR TAKEN.

THEREAFTER, WE WERE SERVED WITH ANOTHER
LAWSUIT, WE BEING, HAWTHORNE MILL, FILED AROUND
JULY THE 24TH, '03.

I FRANKLY DON'T RECALL THE CIRCUMSTANCES OF
THE SERVICE.  BUT WE'RE NOT CHALLENGING THAT.

THE ENTITIES THAT WERE SERVED WERE OVERLAND
PROPERTIES, JOINED AND HAWTHORNE MILL, L.L.C.

THAT COMPLAINT ESSENTIALLY RELITIGATED, IN
OUR OPINION, AND IT HAS BEEN SO RULED NOW BY JUDGE
BRIDGES, JUDGE FORREST BRIDGES, ATTEMPTED TO
RELITIGATE ISSUES THAT WERE RAISED IN THE
ARBITRATION, AND WHICH WERE DISMISSED FOR LACK OF
JURISDICTION BY JUDGE JOHNSON.

ONCE THIS CASE WAS FILED, WE IMMEDIATELY, BASED ON THE VERIFIED COMPLAINT OF SOMEONE NAMED CARL MANCINI, (PHONETIC SPELLING) ASKED TO DEPOSE MR. MANCINI.

THE REASON FOR THAT, FRANKLY, YOUR HONOR, I NEVER SEEN, HEARD OF, MET OR OBSERVED ANYONE BY THAT NAME IN ANYTIME IN CHARLOTTE, NORTH CAROLINA.

THERE IS NO WAY MR. MANCINI COULD HAVE ANY PERSONAL KNOWLEDGE OF ANY OF THE TRANSACTIONS WE WERE TALKING ABOUT, IN MY OPINION.

WE FELT ONCE WE DEPOSED HIM, AND THAT WAS ESTABLISHED OF RECORD, THE COMPLAINT WOULD FAIL FOR LACK OF PROPER VERIFICATION.

THE COURT:  WHEN YOU SAY THE COMPLAINT, YOU MEAN THE COMPLAINT IN THIS CASE?

MR. THOMPSON:  THE ONE IN JULY 2002.

THE COURT:  THE ONE WE'RE HERE ABOUT NOW?

MR. MORRISON:  YES, SIR.

MR. THOMPSON:  YES, SIR.  THAT IS CORRECT, YOUR HONOR.  FILED JULY 24TH, '03.  I'M SORRY IF MY DATES ARE WRONG.  JULY 24 OF 2003.

AND THEREAFTER, AS MR. MORRISON HAS INDICATED IN THE AFFIDAVIT IN BRIEF THAT HAS BEEN FILED IN SUPPORT OF THIS MOTION, MR. CHAGARIS TOLD US ON THE EVE OF THE SCHEDULED DEPOSITION OF

MR. MANCINI, THAT HE DID NOT KNOW ANYTHING ABOUT THE CASE AND WOULD NOT BE THE PROPER WITNESS TO BE DEPOSED; WHICH WE KNEW.

HE THEN TENDERED OR SAID THAT HE HAD SOMEONE ELSE NAMED JOHN CULASAK (PHONETIC SPELLING).  NOW I HAVE HEARD THAT NAME.

BECAUSE AS A PIECE OF EVIDENCE THAT WE HAVE NOT OFFERED YET, BUT WE WILL OFFER IT IF IT'S EVER TRIED.  WE HOPE IT WON'T BE.

THE COURT:  WELL, IT'S NOW BEEN DISMISSED, HASN'T IT?

MR. THOMPSON:  EXCUSE ME?

THE COURT:  IT'S NOW BEEN DISMISSED HASN'T IT?

MR. THOMPSON:  THEY INDICATED THEY ARE GOING TO FILE AGAIN.  THAT'S WHY WE'RE HERE, TO SOME EXTENT.  WE WANTED TO MAKE SURE THAT THIS DOESN'T GET TRIED AGAIN, IF POSSIBLE, OR FILED AGAIN, IF POSSIBLE.  OF COURSE WE CAN'T CONTROL THAT, OBVIOUSLY.

BUT WE HOPED THAT THE COURT WOULD -- YOU UNDERSTAND WHY WE'RE HERE.  I HOPE IN JUST A FEW MORE MINUTES I'LL MAKE OUR POSITION FULLY CLEAR, I HOPE.

SOMEONE NAMED MR. CULASAK SIGNED A

15

HANDWRITTEN NOTE ADDRESSED TO HAWTHORNE MILLS,
L.L.C. IN CARE OF ME, SAYING THAT, "I, JOHN
CULASAK, V.P. OF K.A. HOLDINGS IN NEW YORK, AGREE
THAT K.A. HOLDINGS SHALL HAVE VACATED ALL THE
PREMISES AT 1111 HAWTHORNE LANE BY 5:00 P.M.
APRIL 12TH, 2002.

        "I AM AUTHORIZED TO SIGN THIS STATEMENT WHICH
IS DONE IN LIEU OF LITIGATING APPEAL OF EVICTION
PROCEEDING."

        THAT WAS SIGNED ON MARCH 25TH, 2002.  THAT
WAS MORE THAN THREE WEEKS AFTER THEY WERE SUPPOSE
TO BE OUT OF THE PREMISES TO BEGIN WITH.

        IT'S A SIDEBAR, BUT WE FILED A MOTION FOR
EVICTION, SINCE THEY DID NOT HONOR THEIR AGREEMENT
TO WITHDRAW OTHER THAN A SMALL PORTION OF THE
MILL, FOR THE FOUR MONTH PERIOD.  SO WE MOVED TO
EVICT THEM.  WE GOT AN EVICTION NOTICE IN THE
MAGISTRATE'S COURT.  IT WAS APPEALED.

        AND THIS WAS AN INFORMAL AGREEMENT WHEN THEY
WOULD BE OUT, SO THAT WE DIDN'T HAVE TO GO THROUGH
WITH FURTHER EVICTION PROCEEDINGS IN MARCH OF
2002.

        I NEVER MET MR. CULASAK.  THIS WAS PROVIDED
BY MR. MCNEIL.

        MR. MCNEIL, HE OBTAINED IT, I BELIEVE FROM

MR. CULASAK.

I HAVE HEARD OF MR. CULASAK.  AND I BELIEVE
I'VE SEEN HIM ON ONE OCCASION.

I WAS INFORMED THAT'S WHO I OBSERVED ON OR
ABOUT THE PREMISES.  I DON'T BELIEVE I'VE EVER HAD
ANY CONVERSATION WITH HIM.

SUBSEQUENTLY, AS MR. MORRISON'S BRIEF
INDICATES, MEMORANDUM IN SUPPORT OF OUR MOTION
INDICATES, THE DEPOSITION OF MR. CULASAK WAS DULY
SCHEDULED, BUT A COUPLE DAYS BEFORE THAT,
PLAINTIFF'S ATTORNEY INDICATED THAT HE WOULD NOT
BE ATTENDING HIS DEPOSITION.

THE COURT:  WOULD THAT BE MR. CHAGARIS?

MR. THOMPSON:  YES, SIR.  THAT WOULD BE
MR. CHAGARIS.

I'M NOT SURE HOW -- MY COUNSEL HAS CAUTIONED
ME TO REFER TO HIM AS PLAINTIFF'S ATTORNEY RATHER
THAN BY HIS FIRST NAME.

BUT YES, SIR, MR. CHAGARIS HAS BEEN THE
ATTORNEY AT ALL TIMES RELEVANT, AS FAR AS I KNOW,
SINCE THERE WAS A PROCEEDING FILED IN 2002.

PRIOR TO THAT TIME, THE ONLY ATTORNEY I WAS
AWARE OF, WAS A NEW YORK ATTORNEY NAMED C.J.
DIVEN.  THERE WERE NO FORMAL LEGAL PROCEEDINGS IN
NORTH CAROLINA.

THE COURT:  NOW TELL ME ABOUT MR. MCNEIL.
YOU SAY HE IS A LOCAL LAWYER?

MR. THOMPSON:  HE IS A LOCAL LAWYER.
MR. MCNEIL WAS INVOLVED, TO MY KNOWLEDGE, IN THE
FORECLOSURE PROCEEDING AND REPRESENTED K.A.
HOLDINGS AT THE FORECLOSURE PROCEEDING.

HE MAY HAVE BEEN, AND I APOLOGIZE FOR MY LACK
OF RECOLLECTION AT THIS POINT.  HE MAY HAVE BEEN
THE TRUSTEE IN FORECLOSURE.

IT MAY BE THAT HE ACTUALLY EXECUTED THE
DEED --

THE COURT:  WHO DOES HE PRACTICE WITH?  I'M
TRYING TO PLACE HIM, IS THE REASON WHY I'M ASKING.

MR. THOMPSON:  HE GOES BY THE NAME OF JACK
MCNEIL.  HE DOES ALMOST EXCLUSIVELY REAL ESTATE.
HIS OFFICE WAS, AT THE TIME, OUT ON FAIRVIEW.
HE'S OLDER THAN I AM.  I BELIEVE HE WAS AN
ATTORNEY WHEN I WAS FIRST ADMITTED TO THE BAR.
BUT I CAN'T SAY SPECIFICALLY THE NAME OF HIS FIRM
RIGHT OFF THE TOP OF MY HEAD, AND I APOLOGIZE --

THE COURT:  ALL RIGHT.

MR. THOMPSON:  -- FOR MY LACK OF RECOLLECTION
ON THAT.

THE FACTUAL SETTING THEN IS THAT WE -- AFTER
WE HAD TWO SCHEDULED DEPOSITIONS, BOTH OF WHICH

WERE NOT ATTENDED WITH ADVANCE NOTICE, BUT BRIEF

ADVANCE NOTICE, THE OFFER WAS MADE AS

MR. MORRISON'S MEMO ASSERTS BY MR. CHAGARIS, THAT

THEY WOULD PAY OUR WAY TO NEW YORK FOR A

DEPOSITION.

  BUT THERE WAS NEVER ANY EFFORT MADE TO DO SO,

TO MY KNOWLEDGE.

  NOR DID WE PARTICULARLY FEEL THAT WE SHOULD

BE GOING TO NEW YORK TO DEFEND A CASE FILED IN

MECKLENBURG COUNTY.

  THERE WAS A MOTION FILED TO DISMISS THE CASE.

AND JUDGE ROBERT JOHNSTON HEARD THAT IN EARLY

JANUARY OF 2004.

  THE COURT:  YOU TALKING ABOUT THIS CASE?

  MR. THOMPSON:  YES, SIR.

  THE COURT:  ALL RIGHT.

  MR. THOMPSON:  HE DID NOT -- HIS RULING WAS

IN ABEYANCE UNTIL A LETTER WAS WRITTEN IN NOVEMBER

OF '04.

  THE CASE HAD ALREADY APPEARED ON THE TRIAL

CALENDAR SEVERAL TIMES.  WAS NOT, OBVIOUSLY, HEARD

OR EVEN CALLED, BECAUSE OF THE CASE -- BECAUSE

JUDGE JOHNSTON'S RULING MIGHT HAVE BEEN

DISPOSITIVE.

  HE INDICATED IN A LETTER, WHICH I BELIEVE

MR. MORRISON HAS MADE AVAILABLE TO THE COURT,
DATED NOVEMBER 9, 2004 ADDRESSED TO MR. MORRISON
AND MR. CHAGARIS.

"I AM FRUSTRATED THAT NONE OF US HAS BEEN
ABLE TO LOCATE A CASE ON POINT.  THOUGH I'M
CONVINCED ONE EXISTS, AND COULD BE FOUND IF I HAD
MORE LEXIS SKILLS.

"IN ANY EVENT, I AM DENYING THE MOTION TO
DISMISS.

"IF ADJUSTMENTS NEED TO BE MADE IN THE
SCHEDULING ORDER OR TRIAL DATE, PLEASE LET ME
KNOW."

MR. CHAGARIS HAS NEVER PREPARED OR SUBMITTED
TO OUR KNOWLEDGE, ANY ORDER BASED ON THIS LETTER
OF JUDGE JOHNSTON.

SUBSEQUENTLY, MR. MORRISON AT MY REQUEST, AND
I THINK PROBABLY ON HIS ADVISE, FILED A MOTION FOR
SUMMARY JUDGMENT, AND WAS HEARD THE WEEK
SUBSEQUENTLY TO THE FIRST TRIAL SETTING, AFTER
JUDGE JOHNSTON'S LETTER.

FIRST TRIAL SETTING WAS IN THE LATTER PART OF
JANUARY.

JUDGE BRIDGES WAS THE PRESIDING JUDGE.  HE
INDICATED THAT HE WOULD BE WILLING TO HAVE THE
CASE CALLED FOR TRIAL ON THURSDAY OF THAT WEEK.

HE WOULD RULE ON THE MOTIONS AND THEN GO ON TO
TRIAL.

MR. CHAGARIS INDICATED THAT HE DIDN'T WANT TO
DO THAT BECAUSE HIS WITNESSES WERE QUOTE, FROM OUT
OF TOWN.

WE WERE HERE, READY TO GO.

THE COURT:  I CAN FIND THIS OUT LATER, MAYBE
YOU KNOW AND CAN TELL ME, WHERE WERE MR. CHAGARIS
WITNESSES FROM?

MR. THOMPSON:  EXCUSE ME?

THE COURT:  WHERE WERE MR. CHAGARIS'
WITNESSES FROM?  WHERE WERE THEY LOCATED?

MR. THOMPSON:  ALL I KNOW IS THAT K.A.
HOLDINGS IS SUPPOSEDLY A NEW YORK CORPORATION.

ALL I KNOW IS THAT THE CONVERSATIONS I'VE HAD
LONG DISTANCE WERE WITH PEOPLE IN NEW JERSEY AND
WITH C.J. DIVEN IN NEW YORK.

THIS WAS PRIOR TO CLOSING, AND IN THE MONTH
THAT I READ YOU SOME CORRESPONDENCE, MONTH OF
NOVEMBER, EARLY DECEMBER OF 2001.

MY PHONE CALLS THAT I MADE, WHICH WERE FEW,
BUT FEW THAT I MADE, WERE TO NEW YORK AND OR NEW
JERSEY.

I HAVE NO KNOWLEDGE OF WHO ANY OF THESE
PEOPLE ARE.

THEY HAD AN EMPLOYEE OF THE OLD COMPANY,
HANDFORD'S CREATIONS, WHO WAS ON PREMISES IN
CHARLOTTE.  IS A CHARLOTTE RESIDENT, TO MY
KNOWLEDGE.  I'VE SEEN NO SUBPOENA FOR HER.
THERE'S NO SUBPOENA IN THE FILE FOR HER.  I DON'T
KNOW HOW THEY INTENDED TO HAVE HER, IF ANYONE, AS
A WITNESS.

QUITE FRANKLY, THE ONLY WITNESS THAT I KNOW
OF THAT COULD COMPREHENSIVELY TELL WHAT HAS
OCCURRED, IF THERE WERE ANY FACTS AT ISSUE, WOULD
BE SOMEONE THAT I'M ASSOCIATED WITH.

AND THAT'S REALLY THE KEY OF THIS MATTER.

THE HEART OF THIS MATTER IS, THERE IS NO
FACTUAL BASIS, THERE IS NO GROUNDING IN
SUBSTANTIAL FACT AT ALL, FOR THE CLAIMS THEY HAVE
RAISED.

AT THIS POINT, THE ONLY CLAIM LEFT BEFORE
THIS COURT, IS THAT THEY COULD REFILE, IF THEY CAN
REFILE AT ALL, WOULD BE THE CLAIM FOR TORTIOUS
CONVERSION OF GOODS.

THAT CLAIM WAS ALLOWED TO STAND BY JUDGE
BRIDGES IN HIS RULING.

WE DON'T DISAGREE WITH THE LEGAL CORRECTNESS
OF THAT RULING, IN TERMS OF WHAT THE JUDGE HAD IN
FRONT OF HIM.

BUT OUR POSITION IN FRONT OF YOU, SIR, IS THIS:

THEY HAVE HAD THREE YEARS TO PROVE THEIR CASE OR NOT, ON THAT ISSUE.

THEY BROUGHT IN ALL KINDS OF ALLEGATIONS WHICH HAD BEEN DISMISSED, TWICE NOW.

AND RES JUDICATA DID APPLY, IN MY MIND, BASED ON JUDGE BRIDGES' MOST RECENT RULINGS.

THEREFORE, SOME OF THEIR PLEADINGS WERE CLEARLY, BARRED BY LAW, AS WELL AS FACT.

THERE IS ONE FACTUAL ISSUE WHICH THEY SUBMIT THEY STILL MAY BRING ANOTHER CASE, ANOTHER LAWSUIT ON, THAT'S CONVERSION OF GOODS.

THE FACTS FROM OUR STANDPOINT, OBVIOUSLY MAYBE THEY WILL TESTIFY DIFFERENTLY, BUT ALL WE WOULD SAY IS, GOODS THAT REMAINED ON THE PREMISES THAT WERE TO BE VACATED IN TWO WEEKS, AND WHICH WE GAVE THEM MORE THAN FOUR WEEKS TO VACATE.

AND WHICH WE THEN RECEIVED ESCROW DEPOSIT FOR FAILURE TO COMPLY, WERE DISPOSED OF BY AN ENTITY ON BEHALF OF ONE OF THESE ENTITIES THAT'S NAMED IN THE LAWSUIT.

YES, SOME GOODS, AND MOSTLY TRASH, OF QUESTIONABLE VALUE, WAS NO LONGER UNDER THEIR CONTROL.  WE ARE NOT IN ANYWAY HIDING FROM THAT

23

FACT.

THE CONTRACT SPECIFICALLY SAYS, AND DALE
MORRISON IS UNDERLINING FOR ME, THE SPECIFIC
PROVISION OF THE CONTRACT TO PURCHASE OF REAL
ESTATE, IT SAYS IN SECTION THREE, SUBSECTION B,
"PERSONAL PROPERTY LEFT ELSEWHERE ON THE PREMISES
MORE THAN TWO WEEKS AFTER CLOSING, SHALL BEEN
DEEMED ABANDONED."

WE ADMIT THAT ABANDONED PROPERTY, MOST OF IT
JUNK, WE HAD TO DISPOSE OF AT OUR COST, WHICH WE
DID.

THE COURT:  WHAT ABOUT THE TRUCK?

MR. THOMPSON:  PARDON?

THE COURT:  WHAT ABOUT THE TRUCK?

MR. THOMPSON:  THE TRUCK, THEY GOT THEY
TRUCK.  THEY GOT RID OF THE TRUCK.  THEY CAME AND
PICKED UP -- ACTUALLY LET ME RESTATE THAT.

WE HAD TO HAVE THE TRUCK TOWED.  BUT THEY
HAVE THE TRUCK, TO MY KNOWLEDGE.  I NEVER HEARD
ANYMORE ABOUT IT.

THE TRUCK WAS TOWED BECAUSE THEY NEVER CAME
AND GOT IT.  IT WAS TOWED BY A TOWING SERVICE,
LICENSED TOWING SERVICE IN MECKLENBURG COUNTY.
THEY CAME AND PUT IT ON THEIR LOT.  I PRESUME THE
TRUE OWNER OF THAT TRUCK --

24

THE COURT: I WAS JUST -- OF COURSE I DON'T KNOW IF IT'S RELEVANT.

MR. THOMPSON: IT'S NOT. I UNDERSTAND.

BUT I DO THINK TO SOME EXTENT IT IS RELEVANT. AS I READ THE STATUTE, AND MR. MORRISON IS HELPING ME OUT HERE, BECAUSE I DON'T PRACTICE LAW. I AM STILL LICENSED. STILL CURRENT IN MY LICENSE. I WANT THAT TO BE CLEAR WITH THE COURT.

BUT I WOULD LIKE TO SAY THAT WE BELIEVE THAT MR. CHAGARIS, IN MY OPINION, AT LEAST, THIS IS MY ASSERTION, HAS NOT ADEQUATELY RESEARCHED THIS TO KNOW THAT THERE'S A GROUND FOR BRINGING THIS CASE.

IN FACT, CLEARLY A NUMBER OF GROUNDS OF LAW THAT HAVE ALREADY PRECLUDED A NUMBER OF THE CLAIMS THEY BROUGHT. AND HAS BEEN SO RULED BY TWO DIFFERENT SUPERIOR COURT JUDGES.

BUT NOW WE ARE HERE ON THE THIRD DAY, AND HE'S ASKING, HE'S ALREADY HAD IT DISMISSED VOLUNTARILY WITHOUT PREJUDICE, AND SUGGESTED TO US THAT HE INTENDS TO FILE AGAIN.

WE'VE EXPERIENCED CONSIDERABLE EXPERIENCE, MONEY WELL SPENT WITH GOOD ATTORNEYS, TO DEFEND OUR POSITION.

BUT WE BELIEVE THAT WE SHOULDN'T HAVE HAD TO EVER DEFEND IN THE FIRST PLACE.

I'VE LOST MY TRAIN OF THOUGHT TO SOME EXTENT.

IF THE COURT HAS A SPECIFIC QUESTION, I'LL
TRY TO ANSWER.

THE COURT:  I DON'T HAVE A QUESTION.  I THINK
I UNDERSTAND.  I'VE LOOKED AT MR. MORRISON'S
MOTION.  AND I SEE WHAT HE ASKED FOR IN THE WAY OF
RELIEF.

MR. MORRISON, YOU HAVE ANYTHING YOU WANT TO
ADD TO WHAT MR. THOMPSON HAS SAID?

MR. MORRISON:  YOUR HONOR, I DON'T WANT TO BE
REPETITIVE, BUT IT WAS OFFENSIVE THAT WE HAD A
VERIFIED COMPLAINT.

AND IT WAS OFFENSIVE THAT THEY KNEW THEY HAD
A NONJUSTICABLE ISSUE, AT LEAST ON THE AWARD, OF
THE ARBITRATION AWARD OF $50,000.

YET, WHEN GIVEN MORE THAN ADEQUATE
OPPORTUNITY TO TAKE A DISMISSAL, IN THE SECOND
LAWSUIT, THEY PERSISTED IN GOING FORWARD.

AND I THINK THE CASE LAW SAYS THAT THERE'S A
DUTY UPON THE PLAINTIFF, EVEN IF IT SURVIVES A
MOTION TO DISMISS, TO REVIEW ITS COMPLAINT AND SEE
WHETHER IT HAS A JUSTICIABLE CAUSE OF ACTION.

THE COURT:  THAT'S ONE OF THE PROVISIONS OF
RULE 11.

MR. MORRISON:  YES, SIR.  THAT WAS GREATLY

26

OFFENSIVE.

THE OTHER ISSUE THAT I THINK MR. THOMPSON HAS
HIT ON, IS THAT EVEN IF THE CONVERSION ISSUE
SURVIVES SUMMARY JUDGMENT, I THINK THAT, YOU KNOW,
WE NOW HAVE DONE THIS TWICE.  WE'RE THROUGH IT TWO
TIMES.

AS I INDICATED, I WAS TOLD -- AND NO
DISRESPECT TO MR. CHAGARIS, HE INDICATED THAT HE
DIDN'T WANT TO BE PART OF THE THIRD LAWSUIT.  HE
WAS GOING TO HAVE THIS MR. DIVEN OUT OF NEW YORK,
WHO APPARENTLY IS ONE OF THE PRIME MOVERS ON
BEHALF OF THE PLAINTIFF, TAKE OVER THE CASE AND
GET HIM ADMITTED, SPECIALLY ADMITTED TO HANDLE THE
CASE.

BUT THAT THEY WERE GOING TO FILE THIS A THIRD
TIME.  WE JUST DON'T WANT TO GO THROUGH THIS A
THIRD TIME.

IT'S SO NEBULOUS, IT IS SO DIFFICULT TO GET
THEM TO COOPERATE, AS FAR AS WHAT I WOULD EXPECT
OF A NORMAL PROFESSIONAL RELATIONSHIP OF GETTING
INFORMATION FOR SETTING FORTH A BASIS.

WHAT'S HAPPENING TO ME, BASED ON MY
EXPERIENCE, IS MR. THOMPSON HAD A CONTRACT.  BY
THE WAY, THAT CONTRACT WAS BILATERAL.

THEY TOO COULD MAKE THAT DEMAND UPON MOORE

AND VAN ALLEN AND SAY, WE HAVE REMOVED THE

PROPERTY, WRITE US A CHECK FOR THAT $50,000.

MR. THOMPSON'S COMPANY WOULD HAVE HAD 48

HOURS TO OBJECT FOR THAT MONEY, THAT $50,000 WOULD

HAVE WENT TO THEM.

SO -- AND THERE WAS A TIME OF THE ESSENCE

CLAUSE.

WHY ANYONE WOULD SIGN A CONTRACT LIKE THAT,

IS BEYOND MY IMAGINATION.  BUT THAT'S WHAT THE

PARTIES CONTRACTED TO.  AND THESE WERE

CORPORATIONS.  WE'RE NOT DEALING WITH SOME SMALL

CONSUMER.

SO FROM MY STANDPOINT OF THIS, THIS WHOLE

THING HAS BEEN A GAME BY THE PLAINTIFF TO BLEED

THE DEFENDANTS OF THAT $50,000.  MAKE THEM SPEND

$50,000 IN LEGAL FEES, SINCE THEY TOOK THAT

$50,000.

I JUST CONSIDER IT A VERY IMPROPER MOTIVE.

I THINK THE CASES THAT I PROVIDED THE COURT,

AND I ALSO PROVIDED MR. CHAGARIS ON THE SAME DAY

SHOW, THAT AN IMPROPER PURPOSE IS AN OBJECTIVE

STANDARD THAT THE COURT MUST LOOK AT.

WHEN DOES IT JUST HAVE TO SHOW OR ARGUE OR

INTEND THAT IT WAS HARASSMENT.  THE COURT CAN LOOK

AT THE TOTALITY OF THE CIRCUMSTANCES.

AND THE PLAINTIFF HAS A BURDEN OF COMING IN
AND SHOWING THAT IT HAS A LEGAL RIGHT AND BASIS, A
MERITORIOUS RIGHT AND BASIS TO BE IN COURT.

I WOULD SUBMIT THAT'S THE CRUX OF THIS CASE.
THEY WANT TO MAKE MR. THOMPSON TO SPEND $50,000 IN
LEGAL FEES.  THEY ARE WILLING TO GO ALL THE WAY TO
MAKE HIM DO IT.

I WILL JUST TELL YOUR HONOR, AND IF THAT JUNK
HAD VALUE, IT WAS ONLY IN THE VALUE OF -- ONLY IN
THE EYES OF SOME UNUSUAL PERSON.  IT WAS A FILTHY
MESSY BIT OF BROKEN CHRISTMAS ORNAMENTS, DUMPED
BOXES, IT WAS JUST AWFUL LOOKING.

I SUBMIT, THAT MR. THOMPSON SPENT FAR MORE
MONEY THAN HE SHOULD HAVE, IN HAVING TO CLEAN IT
UP.  BUT THAT'S NEITHER HERE NOR THERE.

I'VE SAID ALL I HAVE TO SAY IN THIS, UNLESS
YOUR HONOR HAS QUESTIONS.

THE COURT:  I'LL HEAR FROM.

MR. MORRISON:  IF MR. THOMPSON NEEDS TO
ANSWER QUESTIONS OF MR. CHAGARIS, HE CERTAINLY
WILL.

THE COURT:  ALL MR. CHAGARIS I WILL HEAR FROM
YOU ON THE MOTION OF FEES AND COSTS.

MR. CHAGARIS:  YES, YOUR HONOR, FIRST OFF, I
WOULD LIKE TO GET THE ORDER OF HOW THINGS

TRANSPIRED.

THE FIRST CASE WAS SIMPLY A MOTION TO AFFIRM
AN ARBITRATION AWARD.  WHICH IS THE PROCEDURE SET
BY STATUTE, WHERE WE'RE TENDERING THIS TO THE
COURT FOR ITS CERTIFICATION IN NORTH CAROLINA.

BOTH JUDGES HAD A PROBLEM WITH THE
ARBITRATION AWARD, BECAUSE THE ARBITRATOR INCLUDED
SOME VERY UNUSUAL -- IT WAS A STRANGE AWARD.  AND
IT LOOKED LIKE HE MAY HAVE EXCEEDED HIS AUTHORITY.

THE COURT:  WHO WAS THE ARBITRATOR?

MR. CHAGARIS:  A GENTLEMAN IN NEW YORK.

THE COURT:  WHERE DID THE ARBITRATION TAKE
PLACE?

MR. CHAGARIS:  IN NEW YORK.

THE COURT:  OKAY.

MR. CHAGARIS:  AND JUDGE JOHNSON FOUND THAT,
RIGHTLY OR WRONGLY, THAT WE SHOULD HAVE FILED A
MOTION TO COMPEL THEM INTO ARBITRATION.  THAT THE
COURT DID NOT HAVE JURISDICTION, AND THAT HE WAS
DISMISSING THAT OLD AWARD WITH PREJUDICE AND
VACATING IT.

SO BASICALLY FOR PURPOSES OF NORTH CAROLINA,
IT DOESN'T EXIST.  WHICH IS FINE.  WE CONSIDERED
APPEALING IT.

BUT LOOKED AT IT, AFTER REVIEW OF THE AWARD,

IT WAS SUCH AN UNUSUAL AWARD, IT DIDN'T LOOK LIKE

SOMETHING WORTH RISKING TO RALEIGH, BASED ON THE

AWARD ITSELF.

SO WE BROUGHT A SECOND ACTION.  WE DID NOT

BRING A SECOND ACTION FOR THAT $50,000 THAT WAS

VACATED BY THE AWARD.  THAT WAS DISMISSED.  THE

COURT MADE IT CLEAR, YOU CAN'T SUE OVER THAT.  I'M

GETTING RID OF IT IN ITS ENTIRETY.

THE COURT:  WHAT WAS THRUST OF THE SECOND

ACTION?

MR. CHAGARIS:  SECOND ACTION WAS PRIMARILY A

CONVERSION, DAMAGES FROM HAVING TO RE-LEASE THE

FACILITY, ADDITIONAL FACILITY AND SPACE TO COVER

THE DAMAGES, AND THE COST INCURRED ON THE BREACH

OF THE CONTRACT, INCLUDING THE COST OF THE

ARBITRATION.

THE FEES PAID TO THE ARBITRATION, PURSUANT TO

THE CONTRACT.

THIS CASE WENT FROM --

THE COURT:  ARBITRATION FEES EVER BEEN PAID?

MR. CHAGARIS:  YES.  DAMAGES WERE HEARD.

LET ME BRING TO THE ISSUE THIS MOTION, THESE

SAME MOTIONS OR SANCTIONS WERE ALREADY HEARD BY

JUDGE JOHNSTON, IT'S INCLUDED IN HIS MOTION.

SO IT'S OUR POSITION, IT'S NOT EVEN RIGHT TO