# Exhibit X

STATE OF NORTH CAROLINA   IN THE GENERAL COURT OF JUSTICE
COUNTY OF MECKLENBURG   SUPERIOR COURT DIVISION
                         03-CVS-12766

KA HOLDINGS OF NEW YORK, }
INC., }
         Plaintiff, }
vs. }                                       ORDER
                         }
OVERLAND PROPERTIES, INC. }
And HAWTHORNE MILL, LLC, }
                         }
         Defendants. }

This Matter came on to be heard, after Defendant filed a Notice of Voluntary Dismissal of its action, upon Defendants' motions for Sanctions pursuant to Rule 11 of the Rules of Civil Procedure and pursuant to NCGS 6-21.5, and upon the court's own motion to review the matter in the interests of justice. And upon review of the pleadings herein, and review of the court records themselves, including the record in court file 02 CVS 16135, and the statements and stipulations of both counsel in open court, this Court makes the following **Findings of Fact**:

1) This proceeding represents the second cause of action filed in Mecklenburg County by the Plaintiff against the Defendant Hawthorne Mill, LLC. The first proceeding was denominated as 02 CVS 16135 and was styled in Plaintiff's initial pleading as a "Motion to Confirm Arbitration Award". The undisputed factual setting of that first case was that after a real estate sale, a dispute arose surrounding the proper disposition of an escrow deposit.

2) In November 2002 a hearing was held before Superior Court Judge Marcus L. Johnson on Defendants' Response and Motions to dismiss that first proceeding and to vacate any so-called arbitration award, and on December 10, 2002, Judge Johnson entered a final and dispositive ruling that decreed that "Plaintiff's Motion to Confirm the Award is denied with prejudice and the arbitration award entered against Defendant is vacated." Plaintiff's counsel in the first case was the same attorney who has filed this current civil matter. In the first case, on December 19, 2002, said Plaintiff's counsel entered a written notice of appeal of Judge Marcus Johnson's December 10th decision and ruling, but no action was ever taken to pursue or perfect such "appeal".

3) Thereafter, Plaintiff by and through same counsel, in July 2003 filed this civil action alleging several claims against Hawthorne Mill, LLC and Overland Properties, Inc.

4) In September 2003 Defendants filed answers, and Defendant Overland Properties filed a motion to dismiss based on res judicata and collateral estoppel, and Defendant Hawthorne Mill joined in that motion. Defendants also moved for sanctions and an

award of attorney's fees. A hearing was held before the Honorable Judge Robert Johnston in November 2003, and Judge Johnston delayed ruling on the issues raised by Defendants' motions so as to allow each party's attorney to research the legal questions raised and to provide the Court with any available legal dicta on the res judicata effect of dismissal and vacation of an arbitration award.

5) The case languished on the docket from November 2003 until late 2004: during that time Plaintiff did not participate in court-ordered mediation, and failed to produce its verifying witness for deposition at the date and time noticed by Defendants' counsel. In late 2004, Judge Robert Johnston informed respective counsel that he would not grant Defendants' motion to dismiss at that time.

6) In September 2003, Defendants served a Notice of Deposition on Plaintiff's verifying witness, one "Carl Mancini". But Plaintiff failed to ever produce said witness for deposition. Moreover, Plaintiff's attorney, Mr. Chagaris, in open court admits that the verification of Plaintiff's complaint in this matter by Carl Mancini was improperly made in that said Carl Mancini was unfamiliar with the facts of the matter and did not possess sufficient knowledge or belief to honestly verify the complaint, and that a more suitable person would have been someone referred to as "Mr. Culasak (phonetic spelling)". Plaintiff has failed to ever provide such verification, however.

7) Subsequent to Judge Robert Johnston's indication, by letter, of his decision in late 2004 not to grant Defendants' motions at that time. Defendants filed a Motion to Dismiss for Lack of Subject Matter and an Alternative Motion for Summary Judgment in January 2005.

8) These motions came on for hearing before the Honorable Forrest D. Bridges, Superior Court Judge in February 2005. And by consent of counsel said hearing was held in February at a mutually convenient time for the Court and each counsel.

9) After a hearing, Judge Bridges dictated a comprehensive Order in open court in which summary judgment was granted in favor of the Defendants on all claims and issues with the exception of an alleged claim for 'wrongful conversion of personal property'. The actual written Order was signed by Judge Bridges in March, 2005.

10) Thereafter, the matter was duly scheduled for trial, but on the Monday of the trial week Plaintiff's counsel informed the Court that Plaintiff would be taking a Voluntary Dismissal without prejudice. It is stipulated that Plaintiff's counsel informed Defendant's counsel of this move by telephone message only as of the Friday before the trial was scheduled, and it is clear that Defendants and their counsel had already undertaken steps to be ready for trial and to reshuffle witness schedules and commitments. In this regard, Defendants have been inconvenienced, the business activities of their agents have been disrupted, and they have been forced to undergo expenses that naturally flow from trying to defend a litigation matter and prepare for a civil trial, regardless of the perceived merits of the opposing party's case.

Plaintiff by its own admission is an out-of-state entity and no individual person or employee appeared before this court in any representative capacity during the hearing on Defendants' Motion for Sanctions, except for Plaintiff's counsel, Chris Chagaris. Adequate and timely notice was given to Plaintiff.

11) In open court, Plaintiff's counsel has indicated that he will not be involved in further litigation of issues arising from the same circumstances. His specific words are, "They're talking about re-filing. If they do, it's going to be the attorney up there handling it" (Transcript of Hearing, page 34).

12) In addition, Plaintiff's counsel has also indicated to this Court that he did not undertake any attempt to discover the facts and true circumstances of the matter that his client complains of. Plaintiff's counsel specifically stated, "There was never any discovery filed, really, in this case whatsoever" (Transcript of Hearing, page 36).

13) Plaintiff has promulgated a complaint that was improperly and misleadingly verified. Plaintiff's counsel admitted before this court, referring to "Mr. Mancini" (the signer of the verification of the Complaint): "He doesn't know the day-to-day events. I said he's not your day-to-day guy. He says there's a guy named John Culasak who is your day to day guy" (Transcript of Hearing, page 35). This admission occurred some 19 months after the complaint was filed, and means that, during the whole pendency of this case, Plaintiff took no steps to clarify, for the record, what actual person was verifying the allegations of which the complaint speaks.

14) Plaintiff has had ample and considerable time to prepare for trial, to wit:19 months since bringing a complaint, and more than 3 years since late 2001 when the complaint alleges complained-of conduct occurred. Notwithstanding, Plaintiff has now failed to pursue its lone surviving to claim. Plaintiff's only remaining claim prior to the trial date was discussed by Plaintiff's counsel with his client, and Plaintiff's counsel specifically says, "I told them, you know, we could still go forward, et cetera. But I explained to them it was just a conversion" (Transcript of Hearing, page 33). Plaintiff's decision indicates Plaintiff did not think much of its case in as much as it then chose to authorize a dismissal.)

15) The Plaintiff has failed to pursue its lone surviving claim diligently and has failed to prepare for trial, and has failed, by Plaintiff counsel's own admission, to produce even a legitimate verification of its complaint, in as much as counsel statements in open court that the verifying person was not in a position to make such verification.

16)   Defendants have undergone considerable expense in direct legal costs and attorney fees in defending this case, as well as the previous action (02 CVS 16135). The Defendant's shown expenses in this case are: $ 13,855.85.

17)   Defendants have now twice defended lawsuits brought by Plaintiff over similar subject matter, incurring reasonable attorney fees and costs associated with defending the instant case and the previous case. Counsel for Defendants has submitted an Affidavit

concerning services performed and legal fees and expense incurred by Defendants in this case. Counsel for Defendants has significant experience in civil litigation and his fees and costs appear to be reasonable.

18) The statements of Counsel for Plaintiff, Mr. Chagaris, indicate he may have been misled by either Mr. Mancini or Plaintiff's out-of-state attorney, or both.

19) Accordingly, based upon Plaintiff counsel's representations to this Court, the Court fails to find at this time that Plaintiff's counsel wittingly violated Rule 11 of the North Carolina Rules of Civil Procedure or NCGS 6-21.5.

20) The foregoing findings do however lead to the clear inference that Plaintiff has violated Rule 11 of the North Carolina Rules of Civil Procedure and NCGS 6-21.5 by filing a pleading with a verification that was misleading and false as to the affiant's personal knowledge, by continuing to press claims that were not justiciable (as ruled by two different Superior Court judges), by entering a notice of appeal in a previous case but never actually undertaking the perfection of that appeal, by apparently failing to prepare for trial for more than 3 years (in that no discovery was instituted by Plaintiff), and by waiting until the "last minute" to notify Defendants' counsel of the decision to voluntarily dismiss its lawsuit, thereby causing Defendants to undergo the expense and inconvenience of preparing for trial.

21) The imposition of Sanctions on Plaintiff is appropriate.

WHEREFORE, the Court now makes the following **Conclusions of Law:**

1) The Plaintiff has previously filed an action in 2002 that was dismissed *in toto*. The court takes judicial notice of the ruling in that matter (02 CVS 16135) which indicates that what Plaintiff filed was a non-meritorious action. Subsequent to losing that case, Plaintiff waited almost 8 months to bring a second case which attempted to insert some of the same claims that were previously dismissed, and this attempt to re-litigate plus the delay in filing as well as the facts set out above and statements by Plaintiff's counsel clearly establish that Plaintiff did not seriously consider its second case to be meritorious.

2) The Plaintiff has exploited the Court here with its misleading verification in as much as the verification of the Complaint was not signed by someone having sufficient personal knowledge to be able to honestly aver as alleged

3) The prior ruling by Judge Bridges in this case leads to the inference that Plaintiff's claims were made with reckless disregard to their justiciability and without regard to the effects of prior court rulings.

4) And now, Plaintiff deciding for its attorney to dismiss its lone remaining cause of action on the eve of a trial date, rather than when it learned of Judge Bridges' decision some 6 weeks earlier – caused Defendants to expend time and money to prepare for trial

further supports an order for sanctions because Plaintiff's claim was not lodged in good faith, but rather with an intent to harass, inconvenience and impose costs upon one or more Defendants.

5)   Defendants have incurred reasonable attorney fees and costs in defending against the Plaintiff's instant case.

6)   Plaintiff should be subjected to sanctions and the sanctions hereafter imposed are appropriate and reasonable.

7)   The actions of Plaintiff in this case, particularly when considered in light of the totality of circumstances, were brought for an improper purpose, and Plaintiff shall be sanctioned as provided under North Carolina law, specifically NCGS 6-21.5 and Rule 11 of the Rules of Civil Procedure. The appropriate measure for sanctions is the legal fees, expenses and costs incurred by Defendants in this particular case, to wit: $ 13,855.85.

8)   No sanctions shall be imposed on Plaintiff's counsel at this time.

NOW THEREFORE, in accordance with the foregoing Findings and Conclusions of Law, it is hereby **ORDERED, ADJUDGED AND DECREED** :

1)   Defendant's motion for sanctions against Plaintiff is allowed.

2)   Plaintiff is hereby sanctioned pursuant to Rule 11 and NCGS 6-21.5, and ordered to pay the sum of $ 13,855.85 to the Defendants, said sum being the appropriate costs and legal expenses. Plaintiff's payment should be made by cashiers or bank certified check in favor of Defendants' counsel, Dale S. Morrison, Law Offices of Dale S. Morrison, 4601 Park Road, Suite 620, Charlotte, NC 28209 not later than thirty days from the entry of this Order.

3)   Defendants' motion for sanctions against Plaintiff's counsel is denied

4)   Counsel for both parties having consented in open court to this Order being entered out of term, this Order shall be deemed to have full force and effect as of March 31, 2005.

So Ordered, THIS __26__ day of __July__, 2006.

_____
The Honorable Marvin Gray
Judge Presiding