UNTIED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
K.A. HOLDINGS LTD. OF NY a/k/a K.A. HOLDINGS
OF NEW YORK, INC. a/k/a K.A. HOLDINGS OF
NEW YORK, LTD. a/k/a KA HOLDINGS LTD.

                                    Plaintiff,

-against-

CHRISTOPHER CHAGARIS,
                                    Defendant.
------------------------------------------------------------X

**AFFIDAVIT IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR CHANGE VENUE**

Case #: 07 civ 9675 (ser)(lms)

I, Bruce Alder, being duly sworn, deposes and says:

1. That I am the vice-president of the above referred Plaintiff Corporation and I make this Affidavit in opposition to Defendant's motion to dismiss the Amended Complaint or change venue to the Western District of North Carolina.

2. The Plaintiff was involved and represented in certain Arbitration Hearings, in New York, in which Hawthorne Mill, LLC (hereinafter referred to as "Hawthorne") was the Respondent, and Charles J. Diven, Jr., Esq. (hereinafter referred to as my "New York counsel") was counsel for KA Holdings of New York, LTD.

3. Plaintiff's demand for arbitration was made pursuant to the commercial rules of the American Arbitration Association consistent with and pursuant to the Contract between the Plaintiff and Hawthorne, on or about December 18th, 2001.

4. Hawthorne Mill, LLC appeared in the matter by counsel admitting the existence of the underlying contract but asserting that the claim was not arbitrable or, in the alternate, that the location of the Arbitration, White Plains, New York was not a convenient forum.

5. The Arbitrator appointed by American Arbitration Association found the arbitration clause in the Contract binding on the parties and scheduled the matter for a hearing

finding Claimant's choice of forum, White Plains, New York, consistent with the American Arbitration Association's commercial rules and the underlying contract.

6. Neither Hawthorne nor it's a counsel filed an application to stay the Arbitration Hearing in a New York Court despite actual knowledge of the Arbitration hearing.

7. The hearings were held in a judicial manner over a course of days, with a reporter preserving a written record, at which K.A. Holdings of New York, Inc. (hereinafter referred to as "KA Holdings") presented evidence through witness testimony and documentation of Hawthorne's breaches under the Contract terms.

8. The Arbitrator found that the Hawthorne breached the Contract, holding that the arbitration clause under the contract authorized him to adjudicate the respective responsibilities of the parties, but that the right to assess damages exceeded the scope of the arbitration clause and, as such, damages needed to be set in a confirmation proceeding in a Court of competent jurisdiction.

9. K.A. Holdings Limited of NY was referred to the Defendant, Christopher Chagaris, an attorney, for purposes of confirming the Arbitration Award and holding an inquest on damages in North Carolina.

10. Mr. Chagaris undertook to represent K.A. Holdings in Mecklenburg County, North Carolina to confirm the award and set damages.

11. Plaintiff's New York counsel provided to Mr. Chagaris the entire record of the Arbitration, which consisted of the Exhibits in evidence together with the transcripts of the hearings and documents related to the underlying transaction that was the subject of the Arbitration.

12. Plaintiff's New York counsel then remained available to Mr. Chagaris for information purposes and as a contact for Plaintiff as it related to the subject transaction and the relevant Arbitration.

13. Mr. Chagaris represented to Plaintiff's New York counsel that he had undertaken to confirm the award in the County of Mecklenburg, State of North Carolina in the General Court of Justice, Superior Court Division under case # 02CvS16135.

14. Mr. Chagaris was informed that both your affiant, other officers of K.A. Holdings and Plaintiff's New York counsel had knowledge of the matter and were available at his request for both preparation and/or testimony, if necessary.

15. Mr. Chagaris did call Plaintiff's New York counsel on several occasions asking for clarification on certain aspects of the Arbitration proceedings and in respect to certain documents.

16. Plaintiff's New York counsel provided those responses and, on several other occasions, produced Carl Mancini, an officer of the Plaintiff Corporation, for a conference call to respond to the Defendant's questions.

17. On each of these occasions Carl Mancini specifically and deliberately informed Mr. Chagaris that he wanted to be informed of the Court appearance schedule and the status of the case, as the monetary value involved was in the multiple millions.

18. Plaintiff's New York counsel also attempted to obtain appearance dates from Mr. Chagaris to aid K.A. Holdings in tracking the matter and insuring that its principals could meet the Court dates because, as it was explained to Mr. Chagaris, many officers of the Plaintiff Corporation were often in various parts of the United States tending to its business concerns and needed at least seventy two (72) hours advance notice to insure

that they could both schedule their appearances and arrange for the appropriate travel arrangements.

19. Mr. Chagaris called, after the fact, and informed Plaintiff's New York counsel that he had appeared on case 02CvS16135 and that an uninformed Administrative Law Judge, not an elected Judge, had erroneously denied the application to confirm the Arbitration Award. Mr. Chagaris stated that the Administrative Law Judge erred because he did not understand Arbitration.

20. Mr. Chagaris also stated that he had appealed the Decision himself, without consulting K.A. Holdings, because the error was so egregious.

21. Your affiant, together with Plaintiff's New York counsel, had a conference call with Mr. Chagaris, immediately thereafter requesting from him the transcripts of his appearance so that we could ascertain the substance of the hearing and an understanding of what had occurred in Plaintiff's absence.

22. Despite various requests continuing through January, 2007, Mr. Chagaris never produced the transcripts, instead explaining that the Court was trying to locate it, that the reporter had to transcribe it from a tape that she was trying to find, finally claiming that he had obtained the transcript but withheld it for payment.

23. Mr. Chagaris further explained to your affiant as well as Plaintiff's New York counsel that, although he had perfected the appeal, he believed that commencing a de novo "fast track" action in Mecklenburg County would actually be heard and decided before the appeal would be decided and that he would leave the appeal to be decided while pursuing the "fast track action".

24. Mr. Chagaris further opinioned that in this "fast track" action, the decision of the Arbitrator, could be used as res judicata as to most factual issues thereby reducing the trial to a hearing on damages.

25. On behalf of K.A. Holdings, Mr. Chagaris commenced case # 03CvS12766 against Overland Properties, LLC. and Hawthorne Mill, LLC.

26. Again by conference calls with Carl Mancini, Plaintiff's New York counsel and Mr. Chagaris, Mr. Chagaris was reminded to provide appearance dates to aid K.A. Holdings in tracking of the matter in an effort to insure that K.A. Holdings' principals could meet any necessary Court dates.

27. Mr. Chagaris represented that discovery would not be necessary given the Arbitration documents that were provided and his theory of res judicata.

28. Mr. Chagaris represented that he would advise when he learned from the Court of the trial date.

29. In or about March, 2005, without any fore notice, Mr. Chagaris called Plaintiff's New York counsel and informed him that the trial was scheduled for the following day.

30. It was explained to Mr. Chagaris that K.A. Holdings' officers could not be sent to North Carolina on twelve (12) hours notice for reasons previously explained to him.

31. Again, in a conference call with an officer of K.A. Holdings, it was explained by Mr. Chagaris that in North Carolina "you are on call for trial" and the call could come at any time.

32. In that same call it was agreed to and represented by Mr. Chagaris that the action 03CvS12766 could be withdrawn and simultaneously re-filed without prejudice to the Plaintiff, as there were no issues with the time limitations under North Carolina Law.

33. Mr. Chagaris represented that he withdrew the case 03CvS12766 and had re-filed the same action under a new case number.

34. It was later learned that Mr. Chagaris did not re-file an action until 2006, despite his representations that he would re-file simultaneously back in March, 2005.

35. During this time, Mr. Chagaris was asked to produce Orders, Decisions and transcripts in each of the previous matters, i.e. the 02CvS16135 and 03CvS12766 matters.

36. Mr. Chagaris stated that no written Orders were ever signed in 02CvS16135, and that he was working on obtaining the transcripts of his appearances in each matter.

37. Given Mr. Chagaris' unresponsive behavior, by February, 2006 letters were sent to Mr. Chagaris attempting to confirm the status of the litigation.

38. Annexed hereto as Exhibit A is one (1) letter attempting to confirm that Mr. Chagaris had filed the Third (3rd) Action and that the Second (2nd) had been withdrawn without prejudice to K.A. Holdings, further requesting copies of the Third (3rd) Complaint.

39. Annexed hereto as Exhibit B are e-mails from May, 2006 asking to schedule a meeting with Mr. Chagaris.

40. As set forth in his response Mr. Chagaris was unable to make any date offered, as he was out of town.

41. Attempts to contact Mr. Chagaris and to learn the status of the litigation continued into June, 2006. See Exhibit C attached hereto.

42. Plaintiff's New York counsel continued to write to Mr. Chagaris, attempting to obtain a copy of the Third (3rd) Complaint. See Exhibit D annexed hereto.

43. On June 13th, 2006 Plaintiff's New York counsel attempted to schedule dates to meet with Mr. Chagaris, but his office reported that he was, once again, out of town on vacation. See Exhibit E attached hereto.

44. Plaintiff's New York counsel again attempted to schedule a meeting on June 28th, 2006, as can be seen from Exhibit F attached hereto.

45. On June 30th, 2006, Mr. Chagaris provided Plaintiff's New York counsel with an Answer, motion and counterclaim in the 06CvS6006 matter, the Third (3rd) Action, notwithstanding that Mr. Chagaris had not yet provided a Complaint. See Exhibit G attached hereto.

46. On July 13th, 2006 Plaintiff's New York counsel wrote to Mr. Chagaris, again attempting to get a copy of the Complaint that he had been seeking, still believing that the Defendant's Answer was time barred, as Mr. Chagaris had represented filing an action a year prior. See Exhibit H attached hereto.

47. As late as September, 2006 Plaintiff's New York counsel wrote to Mr. Chagaris, regarding the transcripts that Mr. Chagaris had still not supplied to him. The same request being also relayed by email. See Exhibit I attached hereto.

48. Mr. Chagaris remained unavailable to reply to the questions regarding the subject litigation. See Exhibit J attached hereto.

49. As of September 27th, 2006 Mr. Chagaris continued to remain unavailable. See Exhibit K attached hereto.

50. On September 28th, 2006 Mr. Chagaris first mailed copies of a March 31st, 2005 transcript of an appearance in action 03-CVS-012766. See Exhibit L attached hereto.

51. In October, 2006, I continued to attempt to meet with Mr. Chagaris to no avail. See Exhibit M attached hereto.

52. On October 13th, 2006 Plaintiff's New York counsel continued to attempt to get the original transcripts from the First Action and to arrange a status meeting. See Exhibit N attached hereto.

53. Plaintiff's New York counsel and I continued our attempts to conference with Mr. Chagaris in person, either telephonically or in person, in New York or North Carolina, at Mr. Chagaris' convenience. See Exhibit O attached hereto.

54. Despite promises to arrange phone conferences, Mr. Chagaris continued to provide only excuses. See Exhibit P attached hereto.

55. Through November 20th, 2006 I, again, attempted to obtain copies of the transcript from the First Action, now learning from Mr. Chagaris that he wanted a deposit to obtain same. See Exhibit Q attached hereto.

56. On November 27th, 2006, Mr. Chagaris reported that the transcript was available, subject to his receipt of money he requested to be put in escrow. See Exhibit R attached hereto.

57. On November 27th, 2006 money for the 02CvS16135 transcript was sent to Mr. Chagaris, to be held in escrow, for the subject transcripts. See Exhibit S November 27th, 2006.

58. On December 11th, 2006 an e-mail was sent seeking the transcripts for which payment was sent into escrow. See Exhibit T attached hereto.

59. On December 11th, 2006 yet another e-mail was sent to Mr. Chagaris regarding the status of the transcripts and the matter.

60. Mr. Chagaris replied by saying that the money was in escrow and would be applied to the anticipated Two Thousand Five Hundred Dollar ($2,500.00) bill for same, contrary to his claims in September that the transcripts were already available. See Exhibit U attached hereto.

61. By March, 2007 at the recommendation of New York Counsel I hired a North Carolina firm to obtain copies of the Court records for each of the Three Actions. See Exhibit V attached hereto.

62. Said records were obtained and forwarded to Plaintiff's New York attorney.

63. From these records, Plaintiff's New York counsel learned that the First Action, 02-CvS-16135, had been dismissed by written Order of the Hon. Marcus L. Johnson on December 12th, 2002, despite Mr. Chagaris' contentions that there was no such Order and that an appeal was pending. See Exhibit W attached hereto.

64. Plaintiff was also informed that although a Notice of Appeal had been file by Mr. Chagaris, he never perfected same and the time to do so had run given the existence of the December 10th, 2002 Order.

65. Plaintiff also learned in 2007 that, by Order of the Hon. Marvin Gray, dated July 27th, 2006, Mr. Chagaris failed to prosecute the Second Action, 03CvS12766, in that he never participated in discovery or appeared for Court Ordered mediation. See Exhibit X attached hereto.

66. KA Holdings further learned of various motions in which Mr. Chagaris never afforded an opportunity to Plaintiff to participate, in that he never informed Plaintiff of their existence.

67. By Order dated August 3rd, 2006 the Hon. David S. Cayer had dismissed KA Holdings' Third Case, 06CvS6006, as time was barred. See Exhibit Y attached hereto.

68. By Order and Dismissal dated September 20th, 2006 signed by the Hon. Richard D. Boner, Mr. Chagaris was sanctioned and his appeal of the August 3rd, 2006 Order dismissed, all without informing K.A. Holdings. See Exhibit Z attached hereto.

69. The September 20th, 2006 Order and Judgment details the history of the litigation from the 02CvS16135 case through the 03CvS12766 case.

70. In reading the Order and Judgment dated September 20th, 2006 signed by the Hon. Richard D. Boner it is clear that Mr. Chagaris not only lied to the Plaintiff and its New

York counsel, but also to Judge Boner who, at paragraph 7 of said Order and Judgment, says as much. See Exhibit AA attached hereto.

71. Annexed hereto as Exhibit BB is a bill from Mr. Chagaris who, ironically, charges Plaintiff for services after the matters were dismissed and for time in which he could only have been working on a response to his own mis-statements to the Court.

72. Mr. Chagaris went about a course of conduct from 2002 through January of 2007, deliberately hiding and concealing his failure to prosecute Plaintiff's claims.

Dated: Yorktown Heights, New York
September 8th, 2008

*Bruce Adler* (signature)
Bruce Adler, Vice President K.A. Holdings, of New York, LTD.

STATE OF NEW YORK         )
                          ) ss.:
COUNTY OF WESTCHESTER     )

On the 8th day of September, in the year 2008, before me, the undersigned, a Notary Public in and for said State, personally appeared **Bruce Adler** personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to be that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person on behalf of which the individual(s) acted, executed the instrument.

_____
Notary

Charles J. Diven Jr.
Notary Public, State of NY
No. 02DI6031456
Qualified in Westchester County
Commission Exp. October 4, 2009